# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>TIMOTHY JOHN McLAREN,<br><br>    Debtor. | Case No. 14-10007-RGM<br>(Chapter 7) |
| BAYVIEW LOAN SERVICING, LLC, AS SERVICING AGENT FOR THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA9 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA9,<br><br>and<br><br>BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR CERTIFICATE HOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA9 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA9,<br><br>    Plaintiffs,<br><br>vs.<br><br>H. JASON GOLD,<br>UNITED STATES DEPARTMENT OF THE TREASURY,<br>VIRGINIA DEPARTMENT OF TAXATION and ALG TRUSTEE, LLC,<br><br>    Defendants. | Adv. Proc. No. 16-1181-RGM |

**<u>MEMORANDUM OPINION</u>**

1

This case is before the court on the motions of H. Jason Gold, the former chapter 7 trustee (the "Trustee"), and ALG Trustee, LLC, the trustee under a first deed of trust ("ALG"), to dismiss this case. (Docket Entries 30 and 32, respectively). The Amended Complaint[1] was filed by The Bank of New York Mellon fka The Bank of New York, as Trustee for Certificate Holders of the CWALT, Inc., Alternative Loan Trust 2006-OA9 Mortgage Pass-Through Certificates, Series 2006-OA9 (the "Noteholder") which held the note secured by a second deed of trust and Bayview Loan Servicing, LLC, as servicing agent for The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificate Holders of the CWALT, Inc., Alternative Loan Trust 2006-OA9 Mortgage Pass-Through Certificates, Series 2006-OA9 ("Bayview") which was the servicing agent for the Noteholder.[2] They seek to hold the Trustee personally liable for distributions he made in accordance with this court's final order approving his Trustee's Final Report (Docket Entry 88) and Trustee's Proposed Distribution (Docket Entry 88 at 7-9). The Complaint also seeks recovery of the disbursed funds directly from the Internal Revenue Service and the Virginia Department of Taxation, creditors to whom the Trustee disbursed pursuant to this court's order, and a judgment against ALG for delivering the proceeds from its foreclosure sale under the first deed of trust to the Trustee rather than the Noteholder whose note was secured by the second deed of trust on the foreclosed property.

**Standard for Decision on Motion to Dismiss**

A motion to dismiss made under Fed.R.Civ.P. 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. *Advanced Cardiovascular*

---

[1] The Amended Complaint (Docket Entry 23) was filed on October 21, 2016. It will be referred to as the "Complaint".

[2] The Noteholder and Bayview make the same allegations and will be referred to simply as the "Noteholder" unless the context indicates otherwise.

2

*Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). In reviewing the legal sufficiency of the complaint, the court accepts as true all well-pleaded allegations and construes the factual allegations in the light most favorable to the plaintiff. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The court does not have to accept the plaintiff's legal conclusions based on the facts or accept as true unwarranted inferences, unreasonable conclusions or arguments. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

### Facts[3]

The facts alleged by the Noteholder are simple. The debtor owned a townhouse located at 1219 Duke Street, Alexandria, Virginia, that was subject to a first and second deed of trust. The note secured by the second deed of trust was held by the Noteholder.[4] Prior to the debtor filing his petition in bankruptcy, the first trustholder caused ALG, the trustee of the deed of trust securing its loan, to sell the property pursuant to the first deed of trust which ALG did on October 25, 2013, for $512,000.00. The first trustholder was paid $32,785.00 which paid the note in full. After payment of the costs of the foreclosure sale, ALG had remaining sales proceeds of $456,802.72 which it ultimately paid to the Trustee. ALG's accounting was filed with and approved by the Commissioner of Accounts for the Circuit Court for the City of Alexandria which reflects these facts. Complaint, Ex.1.

---

[3] The Facts are taken from the Amended Complaint and are accepted as true for purposes of a motion to dismiss. All pleadings and court's docket entries referred to in this Memorandum Opinion were included in the Amended Complaint.

[4] More particularly, The Bank of New York Mellon [formerly known as] the Bank of New York, was the Trustee for Certificate Holders of the CWALT, Inc., Alternative Loan Trust 2006-OA9 Mortgage Pass-Through Certificates, Series 2006-OA9 and the note was held by the trust. Bank of America was the servicing agent for the trust until March 31, 2014, when it transferred the servicing rights to Bayview.

ALG would ordinarily have paid the second trustholder – the Noteholder in this adversary proceeding – its claim, to the extent of the funds available. ALG did not disburse the balance of the sales proceeds to the Noteholder prior to the debtor filing his petition in bankruptcy on January 2, 2014. In light of the bankruptcy, ALG paid the balance of the sales proceeds to the Trustee on March 28, 2014.[5] The Trustee filed his Final Report on March 17, 2015, and noticed it for a hearing to be held on April 14, 2015. It plainly showed receipt of $456,802.72 as "Foreclosure Proceeds 1219 Duke St. Alexandria Va." Trustee's Final Report, Individual Estate Property Record and Report, Form 1, Line 10. There were no objections to the Trustee's Final Report and it was approved by the court. The court entered an order approving the Trustee's Final Report on April 21, 2015, and the Trustee disbursed in accordance with it. He filed his Chapter 7 Trustee's Final Account and Distribution Report Certification That the Estate Has Been Fully Administered and Application to Be Discharged (Docket Entry 96) on October 1, 2015.[6] The case was closed on October 6, 2015.

The sales proceeds were disbursed in payment of the costs of administration of the bankruptcy estate and to the IRS and the Virginia Department of Taxation pursuant to their proofs of claims for priority tax claims. There was no disbursement to the Noteholder or the unsecured creditors.

---

[5]The transmittal letter to the Trustee stated:

> I represent ALG Trustee, LLC with regard to the above reference property. The property was sold at a foreclosure sale on October 25, 2013. A balance of FOUR HUNDRED FIFTY-SIX THOUSAND, EIGHT HUNDRED TWO and 72/00 DOLLARS ($456,802.72) remains to be distributed to junior lienholders and/or the Debtor. I have enclosed the check for $456,802.72 to you on behalf of the estate.

[6]The Trustee's Final Account and Distribution Report was also filed on September 29, 2015. (Docket Entry 95).

The Noteholder knew of the filing of the petition in bankruptcy. Attorneys for both the Noteholder and Bayview filed notices of appearance in the case. Bayview filed a Motion for Relief from Stay or in the Alternative Adequate Protection. (Docket Entry 73). The Trustee filed a response stating that the property had been sold at foreclosure prior to the filing of the petition in bankruptcy. (Docket Entry 77). Both the Trustee and Bayview attached copies of the City of Alexandria tax records showing that the property was no longer titled in the debtor's name. Bayview withdrew its motion for relief from stay. It never filed a proof of claim.[7]

## **Property of the Estate**

The key to the Noteholder's claim is that the proceeds of sale from the foreclosure were not property of the bankruptcy estate. Complaint at ¶¶39, 45, 48 and 59. This proposition is not well taken. The Noteholder asserts that the sales proceeds from the foreclosure sale were not property of the estate because the foreclosure sale was completed prior to the filing of the petition in bankruptcy and the debtor, therefore, had no interest in the Alexandria property. *Abdelhaq v. Plug (In re Abdelhaq),* 82 B.R. 807 (E.D. Va. 1988); *In re Wolf,* 344 B.R. 762 (Bankr. W.D. Va. 2006); *In re Ulrey,* 511 B.R. 401 (Bankr. W.D. Va. 2014). While it is true that the foreclosure sale was completed prepetition and that the debtor had no further right in the property that does not mean that the debtor did not have an interest in the sales proceeds from the foreclosure sale itself.

The starting point is § 541(a) of the Bankruptcy Code which provides that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of § 541(a)(1) is broad. *United*

---

[7]Bayview had ample time to file a proof of claim. The bar date was July 1, 2014, and counsel for Bayview filed his Notice of Appearance on May 23, 2014. As of May 23, 2014, at the latest, counsel for Bayview was charged with notice of the proceedings in the case, especially deadlines such as bar dates for filing proofs of claims. Bayview knew it had not been paid and could file a proof of claim as a secured creditor. As evidenced by its Motion for Relief from Stay which was filed on October 14, 2014, it thought it was a secured creditor. Complaint ¶¶22 - 24.

5

*States v. Whiting Pools, Inc.,* 462 U.S. 198, 205,103 S.Ct. 2309, 2313 (1983). It includes property in which a creditor has a secured interest. *Id.* at 203, 103 S.Ct. at 2313.

> Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests.

*Id.* Congress expressly changed the treatment of secured lenders that had prevailed under the Bankruptcy Act of 1898 with enactment of the Bankruptcy Code of 1978. Section 506(a) of the Bankruptcy Code now permits an undersecured creditor – a creditor whose lien exceeds the value of the collateral – to bifurcate its claim into two claims: a secured claim to the extent of the value of the collateral and an unsecured claim for the balance of the claim. The presence or absence of equity – whether the secured creditor is oversecured or undersecured – does not affect whether an encumbered asset is property of the estate.

*Whiting* stands for the proposition that a debtor retains an interest in his property that is subject to creditor action until the last act divesting the debtor of his property interest is completed. Until then, the debtor retains an interest in the property and – if the last act divesting the debtor of his property is not completed prior to the debtor filing a petition in bankruptcy – the property interest becomes property of the bankruptcy estate. In *Whiting,* the IRS seized Whiting Pools' trucks prior to the debtor filing its chapter 11 petition in bankruptcy. The IRS refused to return the vehicles, arguing that the debtor had no further interest in the trucks. The Supreme Court held that the IRS had a lien on the trucks and had properly seized them but that the sale of the trucks had not been completed prior to the filing of the petition in bankruptcy. Pursuant to the Internal Revenue Code and regulations, the trucks had to be sold once they were seized. If there had been a prepetition sale, the trucks would not have become property of the estate. Seizure alone was not sufficient. *Id.* at

6

211, 103 S.Ct. at 2317; *see also In re Moffett*, 356 F.3d 518 (4th Cir. 2004) (relying on *Whiting* in affirming bankruptcy court's decision requiring creditor to turn over car that was repossessed pre-petition but not sold); *In re Anderson*, 29 B.R. 563 (Bankr. E.D. Va. 1983) (holding that debtor's right to redeem truck was property of the estate that a bankruptcy court could compel an entity in possession to turn over).

This principal has been applied in numerous cases in Virginia dealing with foreclosures. Under state law – which controls under *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914 (1979) – the debtor has no further interest in the *real property* once ALG sells the real property at public auction and signs a memorandum reciting the fact of the sale, the name of the purchaser and the sales price. At that point, the debtor has no further right to redeem the *real property*.[8]

None of the cases address the proceeds of a foreclosure sale. Until the proceeds of sale are paid to the secured lender – in this case the sales proceeds were held by a third party, the trustee under the prior deed of trust – the debtor has an interest in the proceeds of sale even though they are subject to the lien of a secured lender. It is not a question of whether there is any equity in the proceeds of sale. Even if fully encumbered, the debtor retains a right in them. In *Whiting,* the Supreme Court was not concerned with the presence or absence of equity in reaching its decision.[9] The extent of equity is a consideration in determining adequate protection but not in determining whether the trucks were property of the bankruptcy estate. Because the trucks were property of the bankruptcy estate, the IRS had the obligation to turnover the trucks if adequate protection was given.

---

[8] The foreclosure auction results in a sales contract. If the sales contract should fail to close, the real property reverts to the pre-contract stage and the debtor would have an interest in the real property.

[9] "According to uncontroverted findings, the estimated liquidation value of the property seized was, at most, $35,000, but its estimated going-concern value in Whiting's hands was $162,876." *Whiting,* 462 U.S. at 200, 103 S.Ct. at 2311. The tax lien was approximately $92,000. *Id.* at 199, 103 S.Ct. at 2311.

For bankruptcy purposes the proceeds of sale are cash collateral and are subject to 11 U.S.C. § 363. Even though as a practical matter in most chapter 7 cases the chapter 7 trustee will not be able to provide adequate protection, that does not cause the sales proceeds to cease to be property of the estate. If the secured creditor files a motion for relief from the automatic stay, it will likely be granted and the sales proceeds paid over to the secured creditor to the extent of its claim. Nonetheless, the chapter 7 trustee retains the right to seek to use cash collateral under 11 U.S.C. § 363.

The Noteholder fails to distinguish between the real property in which the debtor had no interest and the proceeds from the foreclosure sale in which the debtor did have an interest. The proceeds of the foreclosure sale had not been paid to the Noteholder when the debtor filed his petition in bankruptcy. Thus, he had an interest in the entire proceeds when he filed bankruptcy – not just the proceeds in excess of any liens.[10]

### Finality of Order Approving Trustee's Final Report

If the Noteholder or its servicing agent had filed a proof of claim or taken any other action in the bankruptcy case before the order approving the Trustee's Final Report was entered, the Trustee would have disbursed the sales proceeds to the Noteholder. However, the order is now final and binding on the Noteholder and Bayview, its servicing agent.[11]

The Noteholder asserts that the order approving the Trustee's Final Report was not a final order. A final order is an order that disposes of all matters and leaves nothing to be done except

---

[10] The Noteholder suggests that the debtor did not schedule the proceeds of the foreclosure sale. This has no significance. Property of the estate is determined by 11 U.S.C. § 541 and is not affected by the debtor scheduling or failing to schedule the asset. Property that the debtor fails to schedule is property of the estate and remains property of the estate after the case is closed unless it is abandoned or administered. 11 U.S.C. § 554(c) and (d).

[11] The Noteholder argues that the order approving the Trustee's Final Report was not a final order. Plaintiff's Memorandum in Opposition (Docket Entry 36) at 8.

8

ministerial actions. That is exactly what the order approving the Trustee's Final Report did. The Trustee reported on the administration of the estate in his Trustee's Final Report. He reported on the assets that constituted property of the estate. He reported that he had received $456,802.72 in cash from "Foreclosure Proceeds 1219 Duke St. Alexandria Va." He proposed a scheme of distribution to the creditors. After notice and an actual hearing the court entered its order approving the report and the proposed distribution. At that point there was nothing left to be done in the case except for the ministerial duty of the Trustee to execute the order – that is, disburse the money pursuant to the order. Having done so he reported back to the court that he had made the distributions. Chapter 7 Trustee's Final Account and Distribution Report Certification That the Estate Has Been Fully Administered and Application to Be Discharged. (Docket Entry 95; re-filed as Docket Entry 96) (The docket entry states that "The United States Trustee does not object to the relief requested.") *Id.* The case was closed. Order Discharging Trustee and Closing Case. (Docket Entry 97).

One consequence of an order being final is that it becomes appealable. District courts have jurisdiction to hear appeals from final judgments, orders, and decrees entered by the bankruptcy court. 28 U.S.C. § 158(a)(1). The law articulating rigorous finality standards for the appealability of orders in non-bankruptcy cases is largely inapplicable in bankruptcy cases. The concept of finality is applied in a "more pragmatic and less technical way in bankruptcy cases than in other situations." *In re Swyter,* 263 B.R. 742, 746 (E.D. Va. 2001) (*quoting Comm. of Dalkon Shield Claimants v. A.H. Robins Co.,* 828 F.2d 239, 241 (4th Cir. 1987). "To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory." *Dalkon Shield,* 828 F.2d at 241. Considerations unique to

bankruptcy appeals, such as the protracted nature of the proceedings and the large number of interested parties, require a less rigorous application of the finality rule. *In re Saco Local Dev. Corp.,* 711 F.2d 441, 443-48 (1st Cir. 1983). A bankruptcy "order is final and appealable if it (i) finally determines or seriously affects a party's substantive rights, or (ii) will cause irreparable harm to the losing party or waste judicial resources if the appeal is deferred until the conclusion of the bankruptcy estate." *Swyter,* 263 B.R. at 746.

The Noteholder's argument that the order approving Trustee's Final Report was not a final order would mean that it was not appealable. If it was not appealable creditors alleging that the scheme of distribution was in error would have a very difficult time correcting that error. They would be unable to appeal the order until the trustee had actually disbursed the money to creditors. Such an aggrieved creditor would face the argument that the appeal was moot because effective relief could not be granted once the funds have been disbursed. While it may be possible to recover disbursed funds in some cases and properly re-disburse them, in many cases the number of creditors to whom distributions are made and the size of the distributions would render relief illusory. In short, in many cases a properly aggrieved creditor would have no recourse to an incorrect trustee's final report or an improvidently entered order approving it.

In the context of a chapter 7 case with assets to be administered, there is no order more central to payment of creditors than the order approving the trustee's final report. "It alters the status quo and fixes the rights and obligations of the parties." *Bullard v. Blue Hills Bank,* 135 S. Ct. 1686, 1692, 135 S.Ct. 1686, 1692 (2015) (order denying confirmation of a chapter 13 plan and granting leave to file an amended plan is not a final order). It establishes which creditors receive distributions and the amount of the distributions. It allows the chapter 7 trustee to make the distributions. After the trustee makes the distributions, the trustee files a final report that accounts

for the disposition of assets and the distribution of funds to creditors and for administrative expenses. The case is then closed.

In this case, the Trustee gave notice of his Final Report on March 18, 2015. No objection was filed and the Final Report was approved by court order on April 21, 2015. The order approved the Trustee's administration and proposed distribution of the estate's assets. Since the order resolved all of the issues relating to the Final Report, it is a final, appealable order. *See In re Carr,* 321 B.R. 702 (E.D. Va. 2005) (hearing debtor's bankruptcy appeal of the bankruptcy court's final order approving trustee's final report); *In re Kristan,* 2008 WL 8664765, at *2 (B.A.P. 1st Cir. Dec. 15, 2008) (determining that bankruptcy court's order approving the chapter 7 trustee's final report was a final, appealable order); *In re Hollingsworth,* 331 B.R. 399 (8th Cir. 2005) (hearing debtor's appeal of order approving chapter 7 trustee's final report).

Orders approving trustee's final reports are final orders. They are fully appealable. Even if an order is improvidently entered, it is binding. *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270, 130 S.Ct. 1367, 1377 (2010) ("A judgment is not void . . . simply because it is or may have been erroneous." quoting *Hoult v. Hoult,* 57 F.3d 1, 6 (1st Cir. 1995)). In *Espinosa* a chapter 13 plan improperly provided for the discharge of a student loan. Although the order approving the chapter 13 plan was improvident, it was final, and the student loan was discharged.

The remedy for a creditor who believes an order is erroneous is to appeal to the district court or to seek relief in the bankruptcy court under Fed.R.Bankr.P. 9023 and 9024 which incorporate Fed.R.Civ.P. 59 and 60, respectively. They are not available here. The order approving the Trustee's Final Report was entered on the docket on April 21, 2015. There was no motion under Rule 9023. Instead, the Noteholder filed this adversary proceeding on August 30, 2016, seeking to collaterally attack the final order. It was the wrong procedural device, and in any event outside the

permitted time period of Rule 9023. This adversary proceeding was filed more than 16 months after the entry of the order approving the Trustee's Final Report. Rule 9023 requires a motion to be filed within 14 days.

Rule 9024 provides that a motion alleging mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; or fraud, misrepresentation or misconduct must be brought within one year after the entry of the order. Again, the Noteholder used the wrong procedural device and it was filed outside the one-year period in any event.

Rule 9024 also provides that a motion alleging that the judgment is void, has been satisfied or any other reason that justifies relief must be brought within a reasonable time. A reasonable time may be longer or shorter than the one-year period referred to for mistake. Here the Noteholder was aware of the entry of the order when it was entered. There is nothing in the Complaint to explain why the Complaint was filed so late. There is nothing in the Complaint to support the argument that the court did not have jurisdiction to enter the order or that the order was otherwise void. None of the grounds set out in Rule 60(b)(4) through (6) which are incorporated into Rule 9024 are applicable and, if applicable, was not timely pursued.

### Res Judicata

One of the consequences of a final order is it is res judicata as to all matters that were raised or could have been raised. "Res judicata acts as a complete bar to the second action and precludes the litigation of all grounds for defenses and recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior action." *In re Prof'l Coatings (N.A.), Inc.*, 210 B.R. 66, 75 (Bankr. E.D. Va. 1997). Res judicata bars the subsequent action when three elements are satisfied: (1) the prior judgment was final and on the merits and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties

are identical or in privity in the two actions; and (3) the claim in the second matter is based upon the same cause of action involved in the earlier proceeding. *Grausz v. Englander (In re Grausz),* 321 F.3d 467, 472 (4th Cir. 2003); *In re In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996); *In re Williamson*, 327 B.R. 578, 583-84 (Bankr. E.D. Va. 2005).

All of these elements are present in this case. First, the order approving Trustee's Final Report was final and on the merits regarding the Trustee's distribution of the proceeds from the foreclosure sale.

Second, the Noteholder was a creditor and party in interest in the bankruptcy case. "In the bankruptcy context a party in interest is one who has a pecuniary interest in the distribution of assets to creditors." *Grausz,* 321 F.3d at 473; *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985). Moreover, it actively participated in the bankruptcy case. It filed a motion for relief from the automatic stay. Counsel for Bayview filed a notice of appearance.[12] (Docket Entry 56).

The third element is whether the claim in the second matter is based upon the same cause of action involved in the earlier proceeding. The Court of Appeals "recognizes that '[n]o simple test exists to determine whether [claims are based on the same cause of action] for claim preclusion purposes." *Grausz,* 321 F.3d at 473 (*quoting Pittston Co. v. United States,* 199 F.3d 694, 704 (4th Cir.1999)). Generally, "claims are part of the same cause of action when they arise out of the same transaction or series of transactions or the same core of operative facts." *Varat,* 81 F.3d at 1316. In *Grausz,* the Court of Appeals found that the "core of operative facts" in the two actions – the fee application proceeding and the malpractice action – were the same.

---

[12] The Noteholder filed its Notice of Appearance and Request for Service of Notices and Papers on January 20, 2014. (Docket Entry 14).

> Both actions relate to the nature and quality of legal services the Linowes firm provided to Grausz in connection with the bankruptcy proceeding. *See In re Iannochino,* 242 F.3d 36, 47 (1st Cir.2001); *In re Intelogic Trace, Inc.,* 200 F.3d 382, 387 (5th Cir.2000) (noting that the "central transaction" involved in the fee application and malpractice claim was the provision of professional services). The fee application proceeding necessarily included an inquiry by the bankruptcy court into the quality of professional services rendered by the Linowes firm. The court was required to "consider the nature, the extent, and the value of such services" before awarding fees. 11 U.S.C. § 330(a)(3). *See also Iannochino,* 242 F.3d at 47; *Intelogic,* 200 F.3d at 387. By granting the Linowes firm's second and final fee application, the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of Grausz. . . . Grausz's malpractice claim, which alleges that the firm was negligent in advising him about disclosure requirements, addresses this very same work. We conclude, therefore, that the fee applications and Grausz's legal malpractice claim arise out of the same "core of operative facts." The malpractice claim is rooted in the same cause of action as the earlier claim for fees.

*Grausz,* 321 F.3d at 473.

The claims in this adversary proceeding are based upon the same issues resolved by the order approving the Trustee's Final Report – that is, whether the sales proceeds from the foreclosure sale were property of the estate, how they should be distributed, and the Trustee's commission which is based on distribution of property of the estate. The chapter 7 trustee's commission is based only on distribution of property of the estate.[13] *In re Market Resources Dev. Corp.,* 320 B.R. 841 (Bankr. E.D. Va. 2004). Just as in *Grausz,* the court in awarding the Trustee his commission must necessarily have found that the sales proceeds were property of the estate to be distributed by the Trustee. If the court had found that the sales proceeds were not property of the estate, the Trustee's commission would have been substantially less. *In re Eidson,* 481 B.R. 380, 388 (Bankr. E.D. Va. 2012). In approving the scheme of distribution, the court necessarily found that the sales proceeds

---

[13] A trustee's compensation is governed by 11 U.S.C. § 326. Four elements must be satisfied for distributions to be included in the calculation of the trustee's commission: (1) Money must be disbursed; (2) The trustee must disburse the money; (3) The money must be property of the estate: and (4) The money must be disbursed to a party in interest. *Market Resources Dev. Corp.* at 847.

were unencumbered property of the estate to be distributed in the order of priority set out in 11 U.S.C. § 726. If the Noteholder had a better claim to the sales proceeds, the Trustee's Final Report would have provided for a distribution to the Noteholder rather than the administrative claimants, the IRS and the Virginia Department of Taxation. The third element of res judicata is present in this case.

The Court of Appeals examined two additional matters in *Grausz*. The first was whether on the date the final fee order was entered, Grausz "knew or should have known there was a real likelihood that he had a malpractice claim against the Linowes firm." *Id.* at 474. The "second practical consideration, [was] whether the fee proceeding in bankruptcy court provided Grausz with an effective opportunity to litigate his malpractice claim." *Id.* The Court answered both in the affirmative. As to the first, Grausz knew of the adverse claim made against him. He had accused counsel of incompetence and counsel had withdrawn as his bankruptcy attorney. As to the second, there were "[p]rocedural mechanisms . . . available for Grausz to raise his malpractice claim in connection with the fee proceeding." *Id.* at 475.

The additional considerations are present in this case. The Noteholder knew or should have known that the Trustee had the sales proceeds. The Trustee advised the Noteholder and Bayview in his answer to the motion for relief from the automatic stay that the property subject to the Noteholder's lien had been sold at foreclosure before the bankruptcy case was commenced. The Noteholder and Bayview had ample opportunity to determine that there had been a pre-petition foreclosure resulting in sales proceeds subject to its lien and to determine that they had been turned

over to the Trustee.[14] It had ample procedural means to have the Trustee pay the sales proceeds to it, including objecting to the Trustee's Final Report.[15]

All of the elements of res judicata are present and the Noteholder is barred from litigating the issues raised in the Complaint.

### The Trustee's Immunity

The trustee asserts that he has immunity from the lawsuit because he was acting pursuant to an order of this court. While trustees do not hold absolute immunity, they are immune from suit if acting under the direct orders of the court. *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 819 F.2d 74, 76 (4th Cir. 1987). The Court of Appeals stated that "if a trustee is acting under the direct orders of the court, there is immunity. In the absence of an explicit court order, however, a factual issue may arise regarding whether the trustee has acted within her authority." *Id. See also In re Sapp,* 641 F.2d 182 (4th Cir. 1981). In *McGahren v. First Citizens Bank & Trust Co. (In re Weiss),* 111 F.3d 1159, 1168 (4th Cir. 1997), the Court of Appeals stated:

---

[14]The Trustee's Final Report explicitly stated that $456,802.72 was "Foreclosure Proceeds 1219 Duke St. Alexandria Va." In any event, the Noteholder and Bayview had ample time to find out that the Trustee received the sales proceeds from ALG. The foreclosure sale was held on October 25, 2013. The Trustee's answer to the Noteholder's motion for relief from the automatic stay was filed on March 26, 2014, and he filed his Trustee's Final Report on March 17, 2015, almost a year later.

[15]The Noteholder alleges that the Trustee did not *mail* the Notice of Trustee's Final Report Before Distribution to it. Complaint at ¶29. This is a red herring. Fed.R.Bankr.P. 9036 provides that electronic notice is the same as mailed notice. In this case, attorneys for both the Noteholder and Bayview made appearances.

Electronic notice was all that was required. It is automatically given by the court's Electronic Case Filing System to all attorney's of record of all filings and the entry of all orders. Local Bankruptcy Rule 5005-2(A) requires that all motions and pleadings shall be filed through the Case Management Electronic Case Files (CM/ECF) and adopts the Electronic Case Files Policy (CM/ECF). The Electronic Case Files Policy provides that "The Notice of Electronic Filing that is automatically generated by the Court's ECF System constitutes notice and service of the filed document on an attorney User." CM/ECF Policy 9(B), Service of Documents. It also provides that "Immediately following the entry of an order, judgment, decree or proceeding of the court on the docket, the ECF System will transmit to attorney Users in the case, in electronic form, a Notice of Electronic Filing. Electronic transmission of the Notice of Electronic Filing, with a hyperlink to the document, constitutes the notice required by FRBP 9022." CM/ECF Policy 4(E), Notice of Electronic Filing.

> We have previously outlined the nature and scope of a bankruptcy trustee's liability. In *Yadkin Valley Bank & Trust Co. v. McGee,* 819 F.2d 74, 76 (4th Cir.1987), we held that a bankruptcy trustee may be held liable in his or her official capacity as a trustee for acts of negligence. However, a trustee may be held personally liable only for willful or intentional misconduct. *Id.*

*Id*.

In this case, the Trustee acted pursuant to the order approving the Final Report which explicitly directed how the sales proceeds would be distributed. There is no allegation – and none can be made – that the Trustee acted outside his authority or in contravention of the final order. He is, therefore, immune from this suit. *See* Trustee's Final Report (Docket Entry 88) and Chapter 7 Trustee's Final Account and Distribution Report Certification That the Estate Has Been Fully Administered and Application to Be Discharged. (Docket Entry 95).

### Claims Against Third Parties

The Noteholder's claims against the IRS and the Virginia Department of Taxation depend upon the proceeds of sale not being property of the estate. The Noteholder argues that they are not property of the estate and therefore they remain the Noteholder's property. Because they are the Noteholder's property, it asserts, the IRS and the Virginia Department of Taxation improperly received them and were unjustly enriched. They should return the funds to the proper owner. As discussed above, the sales proceeds were property of the estate. Assuming, for the sake of argument, that the Noteholder was correct that all of the proceeds should have been paid to it, the IRS and the Virginia Department of Taxation, nonetheless received the proceeds pursuant to the order of this court. There is no independent basis that would require them to pay the money to the Noteholder. The only remedy is to vacate the order approving the Trustee's Final Report in which case the disbursed funds would be returned to the Trustee for proper distribution. The Noteholder has no independent action against either the IRS or the Virginia Department of Taxation.

## **The Claim Against ALG**

There remains one further claim. This is against ALG. The Noteholder asserts that ALG breached its duties because it improperly paid the remaining sales proceeds to the Trustee. One duty of a foreclosing trustee is to properly pay out the proceeds of the foreclosure sale to the parties entitled to them. This is normally based on a title report. In addition, the trustee needs to know the proper amount to be paid and should request a payoff statement from the intended recipient. Absent a review of the title report and the payoff statement, ALG runs the risk of disbursing the sales proceeds to the wrong party or in the wrong amount. For example, if the proceeds were greater than the payoff and ALG were to pay all the proceeds to the Noteholder, the debtor would be aggrieved. The Noteholder would have been paid too much at the expense of the debtor. Similarly, if the Noteholder was not paid in full and some proceeds were paid to the debtor on the mistaken belief that the Noteholder was paid in full, the Noteholder would be aggrieved. The foreclosing trustee needs to resolve these issues.

In this case, the Noteholder complains that ALG paid the remaining sales proceeds over to the Trustee. The Noteholder claims that this was improper because it was not property of the estate and should not have been paid to it. This has been discussed above and is not a valid grounds for imposing liability on ALG because the proceeds of sale, although encumbered by the lien by the second trustholder, were property of the estate. More importantly, however, §§ 541 and 542 of the Bankruptcy Code provide that a custodian or party in possession of property of the estate must turnover the property to the Trustee. It is for the Trustee to then disburse the property. In this case ALG complied with its statutory obligation under the Bankruptcy Code and delivered the remaining sales proceeds to the Trustee. The cover letter stated that it is up to the Trustee to disburse the funds to "junior lienholders and/or the Debtor" as may be appropriate. Complaint, Ex. 2. This is all that

is required by ALG. ALG complied with the Bankruptcy Code which is the supreme law of the land and which supersedes any other state law concerning ALG's duties in these circumstances. ALG is not responsible for the Trustee's subsequent conduct.

## Conclusion

The Complaint will be dismissed as to the Trustee because he received property of the estate and disbursed it pursuant to an express order of this court. He is immune from suit in this case. The order was never appealed and has not been sought to be vacated or reconsidered.

The Complaint will be dismissed as to the IRS and the Virginia Department of Taxation. They received property of the estate that was disbursed pursuant to the order of this court. The sales proceeds cannot be recovered by a creditor who asserts an error in the distribution. If the final order of this court authorizing and directing the distribution were vacated, the sole party entitled to recover the funds would be the Trustee. The funds would be returned solely to the bankruptcy estate and would be subject to further administration and distribution upon further order of this court. It would not be paid directly by the Noteholder.

The Complaint will be dismissed as to ALG because it properly complied with its duties under §§ 541 or 542 of the Bankruptcy Code which is the supreme law of the land and supersedes state law obligations in this respect. ALG is not responsible for the subsequent disbursement of the funds from the bankruptcy estate.

    Alexandria, Virginia
    December 14, 2016

                                 /s/ Robert G. Mayer
                                 Robert G. Mayer
                                 United States Bankruptcy Judge

Copy electronically to:

Ethan Ostroff
Dylan Trache
Nishant Kumar
Mark Ames
Amy Owen
Dean Robinson
Robert Brandt

20632F